## Sarah A. Thompson v. The People's Traction Company, Appellant.

*Negligence—Street railways—Wagon on track—Rear end collision.*

In an action against a street railway company to recover damages for the death of plaintiff's husband who was killed on defendant's track while driving a wagon, the evidence for the plaintiff tended to show that the wagon was just about leaving the track when it was struck, while the motorman, who was called by defendant, testified that the wagon was driven upon the track just before it was struck. *Held*, that the case was for the jury.

Argued Jan. 19, 1897. Appeal, No. 400, Jan. T., 1896, by defendant, from judgment of C. P. No. 3, Phila. Co., March Term, 1895, No. 46, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for death of plaintiff's husband. Before REED, J.

At the trial it appeared that on November 5, 1894, plaintiff's husband, William Thompson, was killed while driving upon Germantown avenue in the city of Philadelphia. The evidence for the plaintiff tended to show that as the wagon of the deceased was about drawing off the track it was struck in the rear by an electric car. The evidence for the defendant tended to show that the wagon was struck as it was about going upon the track.

The court charged in part as follows :

[The issue now, as developed by the argument of counsel, is the assertion made by the plaintiff that Thompson's wagon was in the track, and was just about leaving the track, when it was struck. The defendant's side of the case is that Thompson had taken his wagon out of the track and was turning towards the track at the time when the thing happened. It is apparently conceded, if you take the plaintiff's view of the case, the plaintiff has good reason to ask for a verdict, or, if you take the defendant's view of the case, your only duty would be to give a verdict for the defendant. In other words, the argument in the case seems to have come down to that one question.] [4] . . . .

How were this wagon and this car placed in point of fact? In the first place, I should say here at this point, it is your duty to try to reconcile everything in the case that is reconcilable. You are not to suppose a contradiction unless you find it.  If you can reconcile the different statements made by the different witnesses up to a certain point, then when it comes to those which you cannot reconcile, of course it becomes your duty to make up your mind which is in the right and which is in the wrong, but you do not come to that until you have done all in your power to reconcile the various statements.  In other words, there was a large number of witnesses in this case, and in many respects their testimony is reconcilable—can be reconciled, as I think you will find.  In the first place, the witnesses for the plaintiff—putting aside for the present the witnesses who know nothing about the accident—we have four witnesses for the plaintiff who saw the accident.  They were Miss Garwood and Smith, and Daniels, who was in the store looking out upon the street, and Mrs. Summers, who was in the car.  Miss Garwood's first knowledge of this accident was caused by the sounding of the bell.  She heard the ringing of the bell, and it was sufficiently emphatic to excite her interest, and although it was raining and she was raising her umbrella—and she explained afterwards by raising that she did not open it, but moved it to one side—she then saw the wagon and car come into collision, but she did not see, apparently, and is not able to give a description of, the position of that car and the wagon previous to the collision, because she said, "just as I raised the umbrella the wagon was struck."  She may have seen, and probably did see, a little before that, but I should judge from her testimony that it was a very short interval of time before the actual contact took place.  Now, in a greater degree the same blank exists in the testimony of other witnesses of the plaintiff.  Lawrence Smith said, "When I saw it"—that is to say, the wagon—"the hind part was in the track.  It was just about turning out." "He"—meaning Thompson—"went to turn out at a time when the wheels were on the track," and that he was a very short distance away.  The next thing he noticed was "I heard the crash and the next thing I saw was the man falling."  Now, Daniels did not see what took place in this case.  The first thing that attracted his attention was the last event in it, namely,

the tragedy itself, the fall of the man, which resulted in his death. He looked out of the glass door of the shop and made a remark, " There is a man thrown out of his wagon. That was the first I saw of it. Q. You saw the collision? A. No, sir; I could not say I saw it."

There is some discrepancy in the testimony, which you will have to consider as between these witnesses and the witnesses for the defendant, in regard to the exact position of the wagon at or about this time. That is to say, just before the collision, and while the collision was taking place. I do not say that these discrepancies cannot be reconciled by you. You will have to consider them. There is no doubt in my mind from the testimony, and I think you will say so, that the wagon was not end on with the car. In other words, it was at some angle to the car. Of course, you can understand the importance of that fact. When one object is immediately in front of another, precisely in front of another, the force is applied to the object behind the first object which is struck under ordinary circumstances would follow a straight line, and we know, therefore, just where it would be found. If, however, one of the objects is at an angle to the other, unless one has special means of observation, it is difficult to say just where the object which is struck at that angle would go. It is skill which enables a man to know just what the effect of a blow given in a certain direction will cause. This wagon, I think you will find, was struck when it was on an angle from the car, and you must consider when you go over the testimony, whether that angle was to the west or right, or whether it was to the left or east. The plaintiff's counsel, argues that the wagon was turning to the left; that it had been in the track, he acknowledges, and was leaving the track turning towards the west, because there was no other car track on the west. The defendant's counsel, on the other hand, contends and points to the testimony of their witnesses, to show that this wagon had not been on the track just prior to the collision, but had been out in the street to the right or west of the track, and in some confusion or blunder this unfortunate man turned right into a place of danger from a place of comparative safety.

Now, look at the evidence of the witnesses for the defendant. There are several of them. One man was at McFarren

street, down below, and there was Butler and Clark, and Wray, the police officer, the motorman, the conductor, Powers, and Walls.   One witness was not firm in the position which he took with regard to the direction in which this horse was turned; the others testified that before the car reached Barr street there had been a string of wagons on the track, and this wagon of Thompson's was the last to turn out.   The others all turned out, and finally he turned out, according to the testimony. Then the car stopped at Barr street, and took on two passengers, and then proceeded on its way.   Now, the defendant's counsel contends that during that stoppage at Barr street, or about that time, Thompson's wagon had been out of the track, and that it was in trying to again get on to the track that this accident occurred.   On the contrary, several of the witnesses, or more than one of the witnesses for the plaintiff say that this wagon, just previous to the collision, or about the time of the collision, was in the track, and was endeavoring to get out, or just in the act of turning out, when the car struck it.   There is some want of clearness, perhaps, on both sides, as to whether this man pulled first to the left and then to the right, or first to the right and then to the left, or whether he only pulled to the right.   One of the witnesses testified that he saw it from the car, that the horse's head came around towards the left, and he assumed from the way in which the horse moved his head that he had been pulled around, but admitted on cross-examination that he was not in a position to see the reins or the hands of the driver, and therefore he did not absolutely see the horse pulled around, but he assumed from his observation that the horse had been pulled around to the left, and that was just before the collision when he says the wagon was out in the street.   As to the rate at which this car was going, and the force of concussion, I do not think there is much contradiction in the case, as counsel argue.   The car struck the hub of the wheel, the left hind hub, and rim of the wheel, with sufficient force to make a dent, and there is evidence that there was sufficient force to bend the back axle.   The bending of the rail in front, which was, according to the testimony of the plaintiff's witnesses, a very considerable dent— just how that occurred there may be a doubt.   Plaintiff's counsel argues that it was because the wagon was driven with

such force against the horse—the horse's hindquarters, that it was bent in a V-shape. These are all questions of fact for you. There was force enough, taken in conjunction with other circumstances, to produce the accident which ended in the death of this man. On the other hand one of the plaintiff's own witnesses said that the passenger car was going slow. There is no doubt that the bell was ringing; and there is no doubt that the brake was put on. There is no evidence that there was any slipping or sliding of the car. On the contrary there is some evidence that it was not very considerable, because the car came to a full stop before it reached this prostrate man. Of course that may be due, to a certain extent, to the car coming in contact with the wagon, which served to break the impetus of the car.

Defendant's points and answers thereto were as follows:

1. That the plaintiff has not proved negligence on the part of the defendant. *Answer :* I refuse that point. [1]

2. That there is no evidence of negligence on the part of the defendant sufficient to justify the jury in considering the accident as being. the result of the defendant's negligence. *Answer :* That point I refuse. [2]

3. That under the evidence the verdict should be for the defendant. *Answer :* I refuse that point. [3]

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Errors assigned* among others were (1–4) above instructions, quoting them.

*Dimner Beeber*, with him *Hampton L. Carson*, for appellant.

*Thomas D. Finletter*, with him *George S. Graham*, for appellee.

Per Curiam, February 8, 1897 :

A careful review of the testimony in this case necessarily leads to the conclusion that it presented controlling questions of fact which the jury alone had the power to determine. On the one hand, if plaintiff's witnesses were believed, their testimony tended to show that the injury which caused the death of plaintiff's husband was the direct result of defendant company's

negligence alone.   On the other hand, defendant's evidence not only tended to prove the contrary, but also to show that said injury was due in part at least to the deceased's own negligence.   In addition to all that, the testimony on both sides was more or less conflicting; so that the case thus presented by the evidence was one which the court was bound to submit to the jury.   It was their special province to reconcile, if possible, the conflicting testimony and determine what the facts were.   The case was accordingly submitted to them in an impartial and adequate charge in which there appears to be no substantial error.

It follows, from what has been said, that the learned trial judge was clearly right in refusing to withdraw the case from the jury by affirming either of the requests for charge recited in the first three specifications.   There is no substantial error in that part of the charge quoted in the fourth and last specification.   Considered as a whole, the charge was neither incorrect nor misleading.   Further and more specific reference might be made to the bearing of the testimony on the question at issue, but it would serve no useful purpose to do so.   The main responsibility, as to the findings of fact, was with the jury.   If they erred in the discharge of their duty in that regard, the power of correction was in the court below.   So far as we have the means of judging, the verdict was warranted by the evidence ; and the judgment entered thereon should not be disturbed.

Judgment affirmed.